NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.G.

No. 1 CA-JV 22-0263
FILED 5-9-2023

---

Appeal from the Superior Court in Maricopa County
No. JD21000
The Honorable Julie Ann Mata, Judge

**AFFIRMED**

---

COUNSEL

Law Office of H. Clark Jones LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael J. Brown joined.

_____

**C A T L E T T**, Judge:

¶1 J.G.'s father ("Father") appeals the superior court's order terminating his parental rights. Because the superior court made all required statutory findings and reasonable evidence supports those findings, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In October 2020, the Department of Child Safety ("DCS") took custody of J.G. because, at birth, he and his mother tested positive for methamphetamine. At that time, Father was incarcerated for methamphetamine possession and had used the drug for over twenty years. Father did not contest the dependency petition DCS filed, and the court adjudicated J.G. dependent.

¶3 The superior court ordered DCS to provide Father with paternity testing and, upon his release, with substance-abuse testing and treatment and parenting services. The DCS investigator spoke with Father, and Father expressed interest in engaging in services after release. DCS reported it was, thereafter, difficult to maintain regular contact with Father or visit him in person due to COVID-19 restrictions. Nonetheless, DCS asked him to self-refer for any services available in his detention facility, such as parenting classes, substance-abuse treatment, or self-improvement courses. The case manager attempted to contact Father but could not reach anyone at the prison. DCS also could not provide Father with a paternity test while in prison.

¶4 In May 2021, Father was released from custody. The case manager's efforts to contact him proved unsuccessful until August when he appeared in court and provided updated contact information. The case manager then set up monthly appointments to discuss services and referred Father for substance-abuse testing and treatment as well as supervised visits with J.G. Afterward, Father maintained inconsistent communication with the case manager.

¶5        Father failed to participate in substance-abuse services, and those referrals were closed.  Additionally, Father completed only five visits with J.G., the last occurring in November 2021—a year before the severance trial.  Around the time of the last visit, Father was again incarcerated on drug charges and was not released until early 2022.  He did not re-engage with DCS until October 2022, when he told the case manager he did not want to participate in services until he had confirmation of paternity. Father obtained confirmation of paternity the following month but did not act on DCS's renewed referrals for substance-abuse services and visitation before the severance trial.

¶6        DCS moved to terminate Father's parental rights under the six- and fifteen-month out-of-home placement grounds.  *See* A.R.S. § 8-533(B)(8)(b)–(c).  After hearing the evidence presented at trial, the superior court severed Father's parental rights.  Under the six-month ground, the court found the following:

> Father neither engaged with the Department nor did he visit with the child. While it is possible that Father engaged in some services as a condition of his probation, he did not seek a Release of Records from APD [Adult Probation Department] until October of 2022. Father acknowledged there was no excuse for his failure to stay in communication with his attorney, or his case manager. While he testified to doing services through APD those services were not the same expectations as the Department's expectations. While the Court acknowledges and commends Father for his recent probation compliance, two negative drug tests for APD and one DCS test that was positive for THC do not negate years of substance abuse as evident by Father's criminal history. Father has refused to participate in reunification services that would have allowed him to bond with his child and demonstrate appropriate parenting capacities.

¶7        Father timely appealed.  This Court has jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶8        Father challenges whether sufficient evidence supports the severance order.  A parent's right to custody and control of his child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248 ¶¶ 11–12 (2000).  Severance of a parental relationship may be

warranted where the state proves one of the statutory grounds in A.R.S. § 8-533 by "clear and convincing evidence." *Id.* at 248 ¶ 12. "Clear and convincing" means the grounds for severance are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85 ¶ 25 (2005). The court must also find that severance is in the child's best interest by a preponderance of the evidence. *Id.* at 288 ¶ 41.

**¶9** This Court "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 4 (App. 2002). This Court does not reweigh the evidence, but "look[s] only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004).

**¶10** Father first argues DCS failed to make diligent efforts to provide him with appropriate reunification services. Before seeking to terminate a parent's rights under the six-month out-of-home placement ground, DCS must make diligent efforts to provide a parent with appropriate reunification services. *See* A.R.S. § 8-533(B)(8)(b). To do so, DCS must provide a parent "with the time and opportunity to participate in programs designed to help [him] become an effective parent[.]" *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). It must undertake rehabilitative measures that have "a reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 34 (App. 1999). Nevertheless, DCS is not required to ensure a parent participates in services, and it is not required to provide futile services. *Id.*; *JS-501904*, 180 Ariz. at 353.

**¶11** DCS asserts Father waived his argument by failing to raise it in the superior court. Indeed, Father attended several hearings and had the case manager's contact information, but he never raised this issue until the severance hearing. The superior court considered three separate motions requesting confirmation that DCS was making reasonable efforts to finalize permanency, and each resulting minute entry contained findings that DCS made reasonable efforts. Father did not object to any of the three motions and did not otherwise request additional services before the severance hearing. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178; 241 ¶¶ 13; 18 (App. 2014) (A parent must "promptly bring [his] concerns to the attention of the juvenile court, thereby giving that court a reasonable opportunity to address the matter and ensure that [DCS is] in compliance with its obligation to provide appropriate reunification services. . . ."). Because Father did not raise his concerns with the juvenile court, we decline

to address his arguments here. Notwithstanding waiver, we have reviewed the record and conclude that it contains sufficient evidence supporting the juvenile court's conclusion that DCS made reasonable efforts to provide Father appropriate reunification services.

**¶12** Next, Father argues the court did not make required "forward-looking" findings under the six- and fifteen-month time-in-care grounds, or alternatively, these findings were insufficient. DCS asserts Father waived his argument that the court failed to make required findings by failing to raise objections in the superior court. *See* Ariz. R.P. Juv. Ct. 317(b)(1) (party seeking to amend a final order based on insufficient factual findings must move for relief within twelve days of order entry); *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452 ¶¶ 20–21 (App. 2007) (This Court generally does not consider arguments raised for the first time on appeal, "particularly so as it relates to the alleged lack of detail in the juvenile court's findings."). Because Father's argument that the court failed to make the required findings is intertwined with his argument that the court's findings were insufficient, and because Father's argument misinterprets A.R.S. § 8-533(B)(8)(b), we exercise our discretion and reach the merits. *See Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 536 ¶ 9 (App. 2018) ("[T]he decision to find waiver is discretionary.").

**¶13** Father argues that the six-month ground requires a "forward-looking finding that the parent's impediments to being able to parent are going to continue," which the superior court failed to make. Under the six-month ground, the superior court may terminate a parent's rights to his child if it finds by clear and convincing evidence that (1) DCS made diligent efforts to provide the parent with appropriate reunification services, (2) the child is under three years of age and under court order, has been in an out-of-home placement for six months or longer, and (3) the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement, including refusal to participate in reunification services offered by DCS. A.R.S. § 8-533(B)(8)(b).

**¶14** The text of the statute does not support Father's suggestion that the six-month ground required the superior court to find whether Father would be able to parent in the near future—there is no such requirement in the statute. *Compare* A.R.S. § 8-533(B)(8)(c) (requiring the court to find "a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future") *with* -533(B)(8)(b) (requiring only that the court find "the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement"). We

will not judicially superimpose such a statutory element. The reason behind the six-month ground similarly cuts against Father's argument. The six-month ground, like its nine-month counterpart, "focuses on the level of the parent's effort to cure the circumstances rather than the parent's success in actually doing so." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 20 (App. 2007). It "was written 'in response to the increasing number of children in foster care whose parents maintain parental rights but refuse to assume their parental responsibilities.'" *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (quoting *Maricopa Cnty. Juvenile Action No. JS-6520*, 157 Ariz. 238, 243 (App. 1988)). Adopting Father's argument would exacerbate that problem, not resolve it.

**¶15** We next reject Father's argument that the court's factual findings are "not supported by reasonable evidence, fail to show unfitness, and improperly shift[ed] the burden to Father to prove his parental fitness." Here, the main circumstances preventing J.G.'s return were Father's history of substance abuse and an inability to meet the child's needs. The record shows Father had over a year to participate in DCS services after his release in May 2021. Yet he failed to maintain contact with DCS despite its attempts to engage him, submitted to a single drug test that returned positive for THC, never completed a substance-abuse assessment (which prevented treatment recommendations), and attended only five visits. The record, therefore, adequately supports the superior court's finding that Father substantially neglected or willfully refused to remedy the circumstances causing J.G.'s out-of-home placement. *See* A.R.S. § 8-533(B)(8)(b) (substantially neglecting or willfully refusing to remedy the circumstances includes a finding that the parent "refus[ed] to participate in [DCS] reunification services").

**¶16** Father nonetheless suggests that despite failing to participate in DCS services, he remedied his drug abuse and parenting deficits. At trial, Father testified he had been sober for two years and had stable employment and housing. He also testified that he had completed treatment and various classes at a rehabilitation center and had signed up for parenting classes through adult probation. But Father's probation records include only a few drug tests. As the superior court found, those tests alone "do not negate years of substance abuse" because they do not demonstrate consistent sobriety. Moreover, although he may have established some employment and housing, Father had visited J.G. only five times in two years, and, as the superior court found, had failed to demonstrate appropriate parenting capacities or a significant bond with J.G.

**¶17** Father makes another similar argument—the statute "cannot be interpreted in a manner that allows a parent" to lose his parental rights when he "ignores services, yet still manages to 'remedy the circumstances,'" suggesting he had done so here. Contrary to Father's argument, our Supreme Court recently held that the statutory severance grounds are synonymous with parental unfitness and confirmed they "ensure[] compliance with the due process requirement that a court find, by clear and convincing evidence, parental unfitness when a severance is contested." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 9 (2018). We affirm the juvenile court's severance decision because the record contains sufficient evidence to establish the six-month ground and to support the juvenile court's conclusion that Father had not remedied the circumstances leading to out-of-home placement. There is no indication in the record that the juvenile court severed Father's parental rights simply because he "ignore[d] services."

**¶18** Finally, Father asserts the juvenile court improperly shifted the burden to him to demonstrate he could care for J.G. But he cites a finding in the court's order pertaining only to the fifteen-month ground. Because we hold that reasonable evidence supports the superior court's termination order under the six-month ground, we do not address any of Father's arguments relative to the fifteen-month ground. *See Jesus M.*, 203 Ariz. at 280 ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

## CONCLUSION

**¶19** We affirm.

